1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH C. SISNEROS,<br>CDCR #F-17317,<br><br>                              Plaintiff,<br><br>                   vs.<br><br>D. BROWN, Sergeant; D. MENDEZ,<br>Correctional Officer; J. DAVIS,<br>Psychiatrist; S. KRITTMAN,<br>Psychologist,<br><br>                              Defendants. | Case No.:  14cv0891 GPC (RBB)<br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT DAVIS<br>AND KRITTMAN'S MOTION TO<br>DISMISS PURSUANT TO<br>Fed. R. Civ. P.  12(b)(6)<br>[Doc. No. 10]**<br><br>**AND**<br><br>**(2) GRANTING DEFENDANT<br>BROWN AND MENDEZ'S MOTION<br>FOR SUMMARY JUDGMENT<br>PURSUANT TO Fed. R. Civ. P. 56<br>AND 42 U.S.C. § 1997e(a)<br>[Doc. No. 9]** |

    Joseph C. Sisneros ("Plaintiff"), is a prisoner currently incarcerated at the California Health Care Facility ("CHCF") in Stockton, California, and is proceeding pro se and in this civil action pursuant to 42 U.S.C. § 1983. Defendants are all correctional and medical officials employed at Richard J. Donovan Correctional Facility ("RJD") where Plaintiff was incarcerated in September and November 2013. *See* Compl., Doc.

1

No. 1, at 1-2. Plaintiff claims Defendants acted with deliberate indifference to his safety in violation of the Eighth Amendment by failing to protect him from being attacked by his cellmate. *Id.* at 3-4. He seeks $49,000 in both general and punitive damages. *Id.* at 6.

## I.    Procedural History

Defendants Davis and Krittman have filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) (Doc. No. 10). Defendants Brown and Mendez have filed a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 based on Plaintiff's failure to properly exhaust available administrative remedies prior to suit, as is required by 42 U.S.C. § 1997e(a) (Doc. No. 9). In response to the Court's Notice to Plaintiff of Defendants' Motion for Summary Judgment (Doc. No. 12), Plaintiff has filed an Opposition (Doc. No. 14), as well as several additional supplemental oppositions, exhibits, and other miscellaneous documents (Doc. Nos. 18, 20, 22, 29). In response to Plaintiff's original Opposition, Defendants have filed a Reply (Doc. No. 16).

After careful review of both Motions, as well as all evidence submitted both by Defendants in support of summary judgment and Plaintiff in response, the Court GRANTS both Defendant Davis & Krittman's Motion to Dismiss Plaintiff's Complaint for failing to state a claim, and Defendant Brown and Mendez's Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies for the reasons set out below.

## II.    Factual Allegations

Plaintiff is "70 years old," weighs "168 pounds," and suffers from "three life-threatening diseases—diabetes, hypertension & the Hep. C virus." Compl. at 3. "A few days" or "about one week" before September 10, 2013, Plaintiff was assigned a cellmate named Gomez, whom Plaintiff describes as "loud & obnoxious," "43 years old at 200+ lbs. & as crazy as they come." *Id.* This "first time," Plaintiff contends he "got rid of Mr. Gomez" by explaining his "bizarre, erratic & crazy behavior" and "the big differences between them," to Defendant Mendez, a Correctional Officer. *Id.* at 3, 7. Plaintiff claims

Gomez "looked dangerous" and he "didn't want to deal with [him]." *Id.* at 3.  Mendez "agreed, and moved Mr. Gomez out." *Id.* at 7.

On September 10, 2013, Gomez was "moved back with [Plaintiff]" for a "second and final time." *Id.* at 3-4. Plaintiff "objected & complained," but Mendez told him he "had no choice," because "Sergeant Brown ok[ayed] the move." *Id.* at 3. Plaintiff "believes" that neither Mendez nor Brown "bothered to check the master file, or the I.S.R.S. file[1] on Mr. Gomez['s] psychological evaluation" before placing him with Plaintiff. *Id.* at 7.

After Gomez moved in, Plaintiff claims he initially helped Gomez with "his laundry, and [his] store," and "protected him from other inmates trying to take advantage of him." *Id.* at 4. Plaintiff also assisted Gomez by "reading and writing" letters from his mother and sister, which is "how [he] found out that Mr. Gomez should be on psych. meds." *Id.*

Plaintiff claims that on November 8, 2013, he "talked to Dr. Davis—the prison psychiatrist," "explained" Gomez's "bizarre and crazy behavior," and told him that "according to [Gomez's] mom," Gomez needed medication.  *Id.* Davis replied that Gomez "had to go through his clinician[,] Dr. Krittman." *Id.*  One or two weeks before

---

[1]  The Institutional Staff Recommendation Summary (ISRS) is part of an inmate's Cumulative Case Summary, and is prepared for each inmate committed or returned to the custody of the CDCR as a parole violator with a new life term. *See* CAL. CODE REGS., tit. 15 § 3075.1(a)(6), (h) (Jan. 1, 2015). "The ISRS shall state the sources of information used and summarize the inmate's history of or status concerning: type of confidential information on file; holds or detainers; medical and dental requirements or limitations; results of a psychiatric or psychological referral; work experiences and skills; narcotics, drugs and alcohol use; escapes; arson offenses; sex-related offenses; academic and Career Technical Education program needs or interests; necessary casework follow-up; the counselor's evaluation of the inmate; release plans if the inmate has six months or less to release; Reentry Hub eligibility; classification score and custody designation suffix; community correctional facility eligibility; and recommended facility placement." *Id.* § 3075.1(h)(1).

November 10, 2013, Plaintiff contends both Drs. Krittman and Davis "had a one on one with inmate Gomez," but "nothing was done." *Id.*

On November 10, 2013, Plaintiff claims Gomez "almost took [his] life because [Plaintiff] asked Gomez politely" to lower the volume on the TV. *Id.* Plaintiff claims Gomez "bushwacked [him]," by "pummeling [him] on the head, face & torso," biting his cheek, stabbing him on the head and face with his eyeglasses, spitting in his ear and face, and kicking him in the ribs, kidneys and shins. *Id.* at 3. Plaintiff claims "the whole ordeal lasted about one hour." *Id.* at 3. Plaintiff claims Gomez was able to "pin[] [him] down real good," and was able to "severely beat [him] almost to the point of death," because Plaintiff's "medical problems, one bad arm," hypoglycemia, and dizzy spells rendered him "defenseless." *Id.* at 4, 7.

## III.   Defendant Davis and Krittman's Motion to Dismiss

Both Drs. Davis and Krittman move to dismiss Plaintiff's Complaint against them pursuant to FED. R. CIV. P. 12(b)(6) on grounds that he has failed to "allege facts necessary to support a claim of deliberate indifference to his safety," and because they are entitled to qualified immunity. *See* Defs.' Mem. of P&As in Supp. of Mot. to Dismiss (Doc. No. 10-1) at 4-8.

### A.   Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals

4

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard ... does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 676-684; *Turner v. City & Cty. of San Francisco*, __ F.3d __, 2015 WL 3619888 at *3 (9th Cir. 2015) (noting that "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.") (internal quotation marks and citation omitted). And while "[t]he plausibility standard is not akin to a probability requirement," it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." *Id.* at 679.

Nevertheless, claims asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972). Thus, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

## B.  Eighth Amendment Failure to Protect Claims

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984);

5

*DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). In fact, the Supreme Court has specifically held that this duty requires officials to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

However, "[p]rotecting the safety of prisoners and staff involves difficult choices and evades easy solutions." *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986). Thus, in order to state a cruel and unusual punishment claim based on a prison official's failure to protect him, Plaintiff must first allege facts sufficient to show that the risk he faced was objectively "sufficiently serious," *i.e.*, that the conditions under which he was confined posed a "substantial risk of serious harm" to him. *Farmer*, 511 U.S. at 834; *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015). Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," Plaintiff's pleading must also contain "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that each individual defendant he seeks to hold liable acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297 (internal quotation marks, emphasis and citations omitted); *see also Hudson*, 503 U.S. at 5, 8.

In a failure to protect case, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. Prison officials display a deliberate indifference to an inmate's well-being only when they know of and consciously disregard a substantial risk of harm to his health or safety. *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Taylor v. Barkes*, __ U.S. __, 135 S. Ct. 2042, 2045 (2015) (noting that *Farmer* holds that "Eighth Amendment liability requires actual awareness of risk."). This "subjective approach" focuses only "on what a defendant's mental attitude actually was," *Farmer,* 511 U.S. at

839, and "is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

Thus, if prison officials "did not know of the underlying facts indicating a sufficiently substantial danger," and "were therefore unaware of the danger," or if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was unsubstantial or nonexistent," they may not be held liable. *Farmer*, 511 U.S. at 844; *see also Gibson v. County of Washoe, Nevada,* 290 F.3d 1175, 1188 (9th Cir. 2002) (noting that a prison official who "should have been aware of the risk, but was not, … has not violated the Eighth Amendment, no matter how severe the risk.").

Moreover, the deliberate indifference standard requires that even if a prison official is alleged to have "actually kn[own] of a substantial risk to [Plaintiff's] health or safety[,] [he] may be found free from liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Deliberate indifference is, therefore, "'something more than mere negligence,' but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Cortez*, 776 F.3d at 1050 (quoting *Farmer*, 511 U.S. at 835).

Thus, in order to state a plausible claim for relief against Drs. Davis and Krittman, Plaintiff's Complaint must include enough "factual content that allows the court to draw the reasonable inference" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), that both Davis and Krittman actually *knew* his cellmate, Gomez, posed an objectively serious risk to his safety or health, "inferred that substantial harm might result from the risk," and then failed to take reasonable action to abate it. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). As currently pleaded, the Court finds Plaintiff's Complaint fails to allege a plausible claim for relief under the Eighth Amendment against either Dr. Krittman or Dr. Davis because he has failed to include sufficient "factual enhancement" from which the Court may reasonably infer that either of them acted, or failed to reasonably act, under circumstances which presented a "substantial" or "obvious risk of "imminent" harm to him. *See Iqbal,* 556 U.S. at 678*; Baze v. Rees*, 553 U.S. 35, 50

7

(2008) (to be deliberately indifferent, a prison official must fail to reasonably act under circumstances which are "'sure or very likely to cause serious . . . and needless suffering'" and which "give rise to 'sufficiently imminent dangers.'" (quoting *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)).

First, Plaintiff claims that while he "talked to Dr. Davis" on November 8, 2013 about Gomez's "bizarre and crazy behavior," and mentioned Gomez's mother's belief that her son "should be on psych meds," *see* Compl. at 4, he pleads no further factual allegations to show that Davis knew, based on this conversation alone, that he faced a "substantial risk" of serious harm if Gomez were not medicated or assigned to another cell; nor does Plaintiff allege any additional facts from which the Court might reasonable infer that Davis consciously disregarded any risk that was "obvious." *Farmer*, 511 U.S. at 842; *Cortez*, 776 F.3d at 1050. In fact, Plaintiff admits Dr. Davis did not simply ignore his concerns, but instead took *some* action when he recommended to Plaintiff that Gomez consult with his clinician, Dr. Krittman, and then met "one on one" with Gomez approximately two weeks before Plaintiff was attacked. *See* Compl. at 4; *Farmer*, 511 U.S. at 844 (defendant is not liable "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."). Moreover, Plaintiff does not allege Gomez made any threats against him in Davis's presence during their meeting, and does not proffer any other facts from which the Court might reasonably infer how or why Davis might have actually "drawn the inference" that Plaintiff faced a substantial risk of harm simply because he shared a cell with Gomez. *Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *see also Taylor*, __ U.S. at __, 135 S. Ct. at 2045 ("Eighth Amendment liability requires actual awareness of risk.").

Even assuming Plaintiff's conversation with Davis on November 8, 2013, provided Davis with information consistent with a potential for harm, a "mere suspicion" without more is insufficient to show deliberate indifference. *Berg*, 794 F.2d at 459 (deliberate indifference "does not require that the guard or official 'believe to a moral certainty that

one inmate intends to attack another at a given place at a time,'" but "he must have more than a mere suspicion that an attack will occur.'") (citations omitted); *see also Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013) (finding summary judgment proper as to prisoner's Eighth Amendment claim where only evidence offered to demonstrate deliberate indifference was defendants' knowledge that plaintiff fought three days prior to his cellmate's attack with a member of his cellmate's gang); *Johnson v. Hicks*, No. 1:11-CV-02162-GSA-PC, 2014 WL 1577280, at *5 (E.D. Cal. Apr. 17, 2014) (finding prisoner failed to sufficiently allege Eighth Amendment failure to protect claim where he claimed attacker was "in Ad–Seg for disciplinary reasons," and was "well known for in-cell violence," but failed to claim any defendant knew his attacker "posed a particular, present danger" to him).

Plaintiff's claims as to Dr. Krittman are even less availing. Specifically, Plaintiff alleges only that Davis told him Krittman was Gomez's clinician, and that Krittman, like Davis, had a "one on one" with Gomez "about one week before he assaulted [Plaintiff]." Compl. at 4. Plaintiff offers no "further factual enhancement" as to Dr. Krittman or any role he may have played in causing Plaintiff's injury. *Twombly,* 550 U.S. at 557; *Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."). Critically, Plaintiff fails to further allege Krittman actually knew Plaintiff had complained to Davis about Gomez's "bizarre and crazy behavior," *id.,* and fails to offer any additional facts from which the court might reasonably infer that Krittman consciously disregarded any substantial risk posed by Gomez that was otherwise "obvious." *Farmer,* 511 U.S. at 842; *Cortez*, 776 F.3d at 1050.

Thus, as currently pleaded, the Court finds Plaintiff's Eighth Amendment failure to protect claims against both Drs. Davis and Krittman are merely "consistent with" possible liability, but, without further factual enhancement, are insufficient to "nudge [Plaintiff's] claim" of cruel and unusual punishment "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678, 680 (citing *Twombly*, 550 U.S. at 557, 570).

Accordingly, the Court GRANTS Defendant Davis and Krittman's Motion to Dismiss Plaintiff's Eighth Amendment failure to protect claims pursuant to FED. R. CIV. P. 12(b)(6).[2]

## IV.   Defendants Brown and Mendez's Motion for Summary Judgment

Next, Defendants Brown and Mendez seek summary judgment as to Plaintiff's Eighth Amendment failure to protect claims on grounds that he failed to exhaust his administrative remedies before filing suit as is required by 42 U.S.C. § 1997e(a) (Doc. No. 9).

### A.   Legal Standards

#### 1.   Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v.*

---

[2]   Because the Court finds Plaintiff has failed to state an Eighth Amendment failure to protect claim against either Defendant Davis or Krittman, it need not further decide whether they are entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

*Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. *See Booth*, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *See Woodford*, 548 U.S. at 90-93. Instead, "to properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,'[ ]-rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). *See also Marella v Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting *Jones*, 549 U.S. at 218).

Because the failure to exhaust is an affirmative defense, Defendants bear the burden of raising and proving its absence. *Jones*, 549 U.S. at 216; *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, Defendants must produce evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable Plaintiff, shows he failed to exhaust. *Id.*

## 2.     Rule 56 Summary Judgment

Any party may move for summary judgment, and the Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a) (quotation

11

marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. FED. R. CIV. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When Defendants seek summary judgment based on the Plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). If they do, the burden of production then shifts to the Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191; *see also McBride v. Lopez*, __ F.3d __, 2015 WL 3953483 at *1, 2 (9th Cir. June 30, 2015) (No. 12-17682) (citing "certain limited circumstances where the intervening actions or conduct by prison officials [may] render the inmate grievance procedure unavailable.").

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

## B. Defendants' Arguments

Brown and Mendez claim the California Department of Corrections and

Rehabilitation ("CDCR") has established an administrative grievance procedure which was available to Plaintiff, and that he, in fact, did avail himself of that procedure by filing three separate administrative appeals referencing Gomez's November 10, 2013 attack. Brown and Mendez seek summary judgment, however, because they claim none of these appeals are sufficient to show Plaintiff exhausted the Eighth Amendment failure to protect claims he now seeks to pursue. *See* Defs.' Mem. of P&As in Supp. of Mot. for Summ. J. (Doc. No. 9-1) (hereafter "Defs.' P&As") at 15-18. Specifically, Brown and Mendez claim Plaintiff's first two administrative appeals failed to put them on notice that he was complaining about Gomez's cell assignment, and not merely seeking medical attention for the injuries he sustained. *Id.* at 15-17. Brown and Mendez further contend that while Plaintiff's third appeal did include allegations related to the danger posed by Gomez's cell assignment, it was not properly exhausted because it was untimely. *Id.* at 17-18.

### C.   Discussion

First, no party disputes that the CDCR provides inmates with an administrative remedy to address both "non-medical inmate grievances," also known as Inmate/Parolee Appeals, which are initiated by filing a CDCR Form 602, *see* Decl. of R. Olson in Supp. of Defs.' Mot. for Summ. J. (Doc. No. 9-3) (hereafter "Olson Decl.") at 1, ¶ 1; Cal. Code Regs., tit. 15 § 3084.2(a), and "medical, dental and mental health care issues," also known as Patient/Inmate Health Care Appeals, which are initiated by filing a CDCR Form 602 HC. *See* Decl. of R. Robinson in Supp. of Defs.' Mot. for Summ. J. (Doc. No. 9-6) (hereafter "Robinson Decl.") at 2 ¶ 2; *Williams*, 775 F.3d at 1191. No party further disputes that appeals related to medical care are "handled under the same regulatory framework" as non-medical appeals, *see* Defs.' P&As at 8, insofar as both are initially reviewed by either custody or medical staff at the institutional level, *see* Robinson Decl. ¶ 3; Olson Decl. ¶ 1; however, "third level" health care appeals are "processed by the Inmate Correspondence and Appeals Branch (ICAB)" and California Correctional Health

Care Services (CCHCS),[3] while third level non-medical inmate appeals are heard by the CDCR's Office of Appeals in Sacramento. *See* Robinson Decl. at 1-2 ¶¶ 1-3; Olson Decl. at 1-2 ¶¶ 1-2.

In addition, no party disputes that an administrative appeal must be filed within thirty calendar days: (1) of the event or decision being appealed, (2) upon the inmate first having knowledge of the action or decision being appealed, or (3) upon receipt of an unsatisfactory departmental response to an appeal filed. *See* CAL. CODE REGS., tit. 15, § 3084.8(b)(1) (quotation marks omitted); *Vaden v. Summerhill*, 449 F.3d 1047, 1049 (9th Cir. 2006); *see also* Olson Decl. at 2-3 ¶¶ 2-4.

A California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his . . . health, safety, or welfare." CAL CODE REGS., tit. 15 § 3084.1(a). Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations requires three formal levels of appeal review. *See* Olson Decl. at 2 ¶ 2.

Thus, in order to properly exhaust, a California prisoner must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," CAL. CODE REGS., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." *Id.* § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a). If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days

---

[3] Health care appeals have been handled separately from non-medical appeals within the CDCR since August 1, 2008, as a result of a still-pending Northern District of California class action lawsuit regarding medical care standards throughout the State's prisons. *See* Robinson Decl., at 2 ¶ 2 (citing *Plata v. Brown*, et al., N. D. Cal. Civil Case No., 3:01-cv-01351-TEH (2001)).

. . . upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2). "The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated."[1] *Id.* § 3084.1(b); *see also* Olson Decl. ¶¶ 2-3; CDCR OP. MAN. § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

Therefore, the only question in this case is whether Defendants Brown and Mendez have carried their burden under Rule 56 to show there is no material dispute as to whether Plaintiff exhausted the administrative remedies made available to him as to the failure to protect claims he now alleges against them before he filed suit as is required by CAL. CODE REGS., tit. 15 § 3084, et seq. *See* Compl. at 2-3; *Williams*, 775 F.3d at 1191.

### 1.    Defendants' Evidence

Defendants admit Plaintiff filed three administrative appeals specifically addressing Gomez's November 10, 2103 attack, and have attached evidence of those appeals as documented in both the CCHCS's health care appeals tracking database (HCARTS), and the CDCR's Office of Appeals Inmate Appeals Tracking System

---

[1]    For example, "[a] second level of review shall constitute the department's final action on appeals of disciplinary actions classified as 'administrative' as described in section 3314, or minor disciplinary infractions documented on CDC Form 128-A (rev. 4-74), Custodial Counseling Chrono, pursuant to section 3312(a)(2), and shall exhaust administrative remedy on these matters." CAL. CODE REGS., tit. 15 § 3084.7(b)(1).

15

(IATS). *See* Defs.' P&As at 8; Olson Decl. at 3-4 & Exs. A & B; Robinson Decl. at 3-4 & Exs. A & B. The content, procedural histories, and outcomes of each of these appeals are summarized below.

### a.   RJD-HC-13049994 / RJD-A-13-3696

On November 16, 2013, six days after he was attacked by Gomez, Plaintiff filed a CDCR 602 Inmate/Parolee Appeal, which was originally logged as RJD-A-13-3696. *See* Decl. of D. VanBuren in Supp. of Defs.' Mot. for Summ. J. (Doc. No. 9-5) (hereafter "VanBuren Decl.") at 3 ¶ 5(a) & Ex. B at 22. In the section of this CDCR 602 Form in which he was asked to "state briefly the subject of your appeal," Plaintiff wrote "personal injury." *Id.* Ex. B at 22. In the following section A, when asked to "[e]xplain [his] issue," and to use a CDCR 602-A if he required more space, Plaintiff described in great detail how he was attacked by Gomez on November 10, 2013, and how he was "caught of[f] guard," when Gomez went "berserk" after he "politely" asked him to lower the volume on the TV. Plaintiff continued by listing his infirmities, describing the physical struggle, and explaining how "days before," he had read a letter from Gomez's mom that said, "Be sure to take your psy. meds." *Id.* at 23. Plaintiff included allegations related to how, prior to the attack, he "went to see Dr. Davis & … told him about [Gomez's] behavior & his mom's letter. Dr. Davis replied he [Gomez] had to go through his clinician D. Krittman before he can dispense psych. meds." Plaintiff then claimed he "followed up on this," by "try[ing] to get [Gomez] his medication," but it was "to[o] late," and Gomez attacked him. *Id.*

In section B of his CDCR Form 602, entitled "Action requested," Plaintiff continued to describe Gomez's attack as a "one way fight" due to Plaintiff's age, diabetes, hypertension, and Hep-C status. *Id.* at 22. On the attached CDCR 602-A, Plaintiff further reported that as a result of Gomez's attack, his jaw and cartilage in his nose was broken, he could "only breathe through one nostril," was experiencing pain while chewing, had a bruised arm and face, and believed a loose muscle or tendon was "just dangling." *Id.* at 23. Plaintiff concluded by "requesting all that's damaged be

16

repaired," including "the diaphragm of [his] back where [his] ribs are." *Id.* Finally, just above his signature, Plaintiff explained that no supporting documents were being attached to his CDCR Form 602 because he was waiting for his "medical report to arrive at medical records." *Id.* at 22.

Plaintiff's CDCR Form 602 Log No. RJD-A-13-3696 was "received" at the Inmate Appeals Office on November 21, 2013. *See* Olson Decl. at 4 ¶ 6(b). On November 22, 2013, Plaintiff was issued a CDC Form 695[4] at the first level of screening. *See* VanBuren Decl. at 2 ¶ 5(a) & Ex. B at 21. According to Inmate Appeals Coordinator Olson, because "the only relief requested was medical treatment for the injuries [he] sustained during the attack," Olson Decl. at 4 ¶ 6(b), Plaintiff was notified that CDC Form 602 Log No. RJD-A-13-03696 was being "returned," and he was "advised that this appeal issue should be submitted to the appropriate CDCR unit for review." *Id.* However, the same November 22, 2013 Form 695 also informed Plaintiff that his "appeal ha[d] been forwarded to health care staff" for "further processing and review," *id.*; indeed, both Olson and Health Care Appeals Coordinator VanBuren admit Plaintiff's appeal was ultimately "accepted for review," "converted to a Health Care Appeal," and re-assigned tracking No. RJD-HC-13049994 on November 25, 2013. *Id.*; *see also* VanBuren Decl. at 3 ¶ 5(a).

On either December 9, 2013, or December 22, 2013, RJD-HC-13049994 was partially granted at the second level of review, and later denied at the third level of

---

[4]   Section 3084.5 of Title 15 of the California Code of Regulations, entitled "Screening and Managing Appeals," provides that "prior to acceptance and assignment for review," the institution's appeals coordinator, or a "delegated staff member under the direct oversight of the coordinator shall screen all appeals." CAL. CODE REGS., tit. 15 § 3084.5(b)(1) (eff. Jan. 2015). "When an appeal is not accepted, the inmate or parolee shall be notified of the specific reason(s) for the rejection or cancellation of the appeal and the correction(s) needed for the rejected appeal to be accepted." *Id.* § 3084.5(b)(3).  Chapter 5 of the CDCR's OPERATIONS MANUAL further provides that "[w]hen it is determined that an appeal will not be accepted[,] an Inmate/Parolee Screening Form, CDC Form 695 . . . shall be completed, attached to the CDCR Form 602 and returned to the inmate or parolee." CDCR OP. MAN., § 54100.10 (eff. Jan. 1, 2015).

1  review on February 26, 2014. *See* Van Buren Decl. at 3 ¶ 5(a) & Ex. B at 18; *see also*

2  Robinson Decl. at 3 ¶ 6(b) & Ex. B; Pl.'s Supp. Doc. in Opp'n (Doc. No. 29) at 26.

3       **b.**    **RJD-HC-13050039**

4       On November 24, 2013, approximately two weeks after Gomez's attack, and just

5  two days after he was issued the CDC Form 695 in relation to Log No. RJD-A-13-3696,

6  Plaintiff filed a separate Patient/Inmate Health Care Appeal on a CDCR 602 HC Form,

7  which was assigned Log No. RJD-HC-13050039. VanBuren Decl., Ex. C at 26. In this

8  appeal, Plaintiff stated that the "subject/purpose of [his] appeal" was "[t]o follow up on

9  injuries [he] sustained [i]n a beating," repeated the details of Gomez's November 10,

10  2013 attack, and explained how his age and medical condition prevented him from

11  "defend[ing] [him]self." *Id.,* Ex. C at 16, 28. Plaintiff further claimed that while someone

12  in the "hospital & the prison clinic" indicated after the attack that there would be a

13  "medical follow up," and he had since "complained various times to the nurse & doctor,"

14  he still "want[ed] to talk to medical," because he believed he had a "brain concussion"

15  which was affecting his memory, eyesight, and hearing. *Id.* at 28. As he did in CDCR

16  Form 602 Log No. RJD-A-13-3696, Plaintiff also reported to have "talked to Dr. Davis

17  concerning [Gomez's] meds & bizarre behavior" before the attack, but claimed Gomez

18  was "moved back with [him] despite [his] warning to CO Mendoza."[5] *Id.*

19       Log No. RJD-HC-13050039, like Log No. RJD-HC-13049994, was partially

20  granted at the second level of review on December 22, 2013, and later denied at the third

21

22  —————————

23  [5]  Plaintiff's Complaint does not name any Correctional Officer named Mendoza as a party

24  to this action; nor does he claim that by referring to Mendoza, he intended to implicate
Defendant Mendez instead. *See* CAL. CODE REGS., tit. 15 § 3084.2(a)(3) ("To assist in the

25  identification of staff members, the inmate or parolee shall include the staff member's last
name, first initial, title or position, if known, and the dates of the staff member's

26  involvement in the issue under appeal. If the inmate . . . does not have the requested
identifying information about the staff member(s), he or she shall provide any other

27  available information that would assist the appeals coordinator in making a reasonable
attempt to identify the staff member(s) in question.").

28

level of review on February 26, 2014. VanBuren Decl., at 3 ¶ 5(b) & Ex. C at 30-32; *see also* Robinson Decl. at 3 ¶ 6(c); Pl.'s Supp. Doc. in Opp'n (Doc. No. 29) at 25.

### c.    RJD-A-13-04021

Finally, on December 20, 2013, approximately forty days after Gomez's November 10, 2013 attack, Plaintiff filed a CDCR 602 Inmate/Parolee Appeal, which was assigned Log No. RJD-A-13-04021. *See* Olson Decl., at 3 ¶ 6(a) & Ex. A at 8-10. This time, when asked to "state briefly the subject of [his] appeal," Plaintiff wrote "reckless behavior." *Id.*, Ex. A at 8. In Section A of the CDCR Form 602, and on the attached CDCR Form 602-A, in which he was asked to "explain [his] issue," Plaintiff again claimed to have been "viciously attacked" by Gomez on November 10, 2013. But this time, in addition to mentioning both Drs. Krittman and Davis's alleged roles in either failing to medicate Gomez or somehow prevent the attack, Plaintiff also identified Defendants Mendez and Brown, and claimed "CO Mendez" was at fault for "plac[ing] Gomez twice with [him]," and Brown was responsible for "OK[ing] the move." *Id.* at 10. Plaintiff then added complaints of "never receiv[ing] some prescription medication, and endur[ing] approx.14 days of excruciating pain," and questioned, "Why was a demented predator placed with a sick old man like myself?" *Id.* Finally, when asked what action he requested, Plaintiff wrote: "It would be nice if everybody involved would admit their mistakes & not pass the blame to somebody else." *Id.*

While Appeals Coordinator Olson admits that RJD-A-13-04021 *did* include claims that Defendants Mendez, Brown, Krittman, and Davis "failed to protect him from vicious attack by his cellmate," and that "his cellmate was moved to his cell with no regard to his safety," Olson Decl. at 3 ¶ 6(a), this appeal was "screened out/cancelled" at the first level of administrative review on December 24, 2013, "due to loss of time constraints," and pursuant to Cal. Code Regs., tit. 15, § 3084.6(c)(4). *Id.* at 3-4. ¶ 6(a) & Ex. A at 6. R. Briggs, the Acting Chief of the CDCR's Office of Appeals, further attests that a search of the IATS database failed to show that Log No. RJD-A-13-04021, or any appeal filed by Plaintiff, which included allegations that Brown or Mendez had failed to protect him

19

from Gomez's November 10, 2013 attack, had ever been accepted for processing at the third level of administrative review. *See* Decl. of R. Briggs in Supp. of Defs.' Mot. for Summ. J (Doc. No. 9-4) (hereafter "Briggs Decl.") at 4 ¶ 8.

### 2.     Plaintiff's Rebuttal Evidence

In opposition to Defendant Brown and Mendez's Motion, and in response to their evidence, Plaintiff filed hundreds of pages of his medical and mental health records. But he does not allege he was denied adequate medical care in his Complaint; therefore these records are not relevant to show that he exhausted his Eighth Amendment failure to protect claims. *See* Doc. Nos. 14, 18, 20, 29. Buried within these submissions, however, Plaintiff also makes further factual allegations as to his former cellmate Gomez's dangerous proclivities, and he includes copies of the same three administrative appeals Defendants Brown and Mendez offer as proof of his failure to exhaust. *See* Doc. No. 29, at 2-3, 23-26.

In fact, Plaintiff appears to concede that he failed to timely exhaust his failure to protect claims as to Brown and Mendez, *see id.* at 31, but argues he was in "excruciating pain" for the "30 to 40 days" following Gomez's attack, that he "tried to fill out the 602 appeal forms [and] to send [them] in before the 30 day time limit," but was "not in his right mind" and "not operating within his faculties" at the time. *Id.* at 34; *see also* Doc. No. 14 at 12. By the time Plaintiff claims he submitted his third administrative appeal via a CDCR Form 602 (Log No. RJD-A-13-04021), this time specifically mentioning both Brown and Mendez's "reckless behavior" in "placing Gomez" in his cell on December 20, 2013, he acknowledges it was "to[o] late." *See* Doc. No. 29 at 31; *see also* Olson Decl., Ex. A at 8-10.

### 3.     Defendants' Reply

In Reply, Defendants Brown and Mendez contend Plaintiff's "allegations that he was in pain or not in his right mind are not sufficient to excuse compliance with the exhaustion requirement," and are belied by other evidence which shows he was able to

20

1  timely file three[6] separate administrative appeals "which discussed the attack and

2  requested additional medical care," but which nevertheless failed to mention Brown and

3  Mendez's failures to protect him from Gomez's November 10, 2013 attack. *See* Defs.'

4  Reply (Doc. No. 16) at 3-4.

5          **4.    Analysis**

6          Based on the evidence presented, the Court finds no genuine material dispute exists

7  as to whether Plaintiff has properly exhausted all available administrative remedies as to

8  his Eighth Amendment failure to protect claims against Defendants Brown and Mendez,

9  and that therefore Brown and Mendez are entitled to summary judgment based on

10  Plaintiff's failure to comply with 42 U.S.C. § 1997e(a). *See Albino*, 747 F.3d at 1166

11  (noting that if "undisputed evidence viewed in the light most favorable to the prisoner

12  shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.").

13          First, Brown and Mendez have carried their burden of production by submitting

14  sufficient evidence which shows that neither of the administrative appeals Plaintiff *timely*

15  filed and properly exhausted through the third and final level of administrative review

16  following Gomez's November 10, 2013 attack (Log No. RJD-HC-1304994 or Log No.

17  RJD-HC-13050039), adequately put either of them on notice that he was seeking to

18  complain about their failure to protect him from Gomez, and not instead seeking medical

19  attention for the injuries he sustained during the attack. An appeal generally "suffices to

20  exhaust a claim if it puts the prison on adequate notice of the problem for which the

21  prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010); *see also*

22  *Jones*, 549 U.S. at 218 (noting that the level of detail in an administrative grievance

23  necessary to properly exhaust a claim is determined by the prison's applicable grievance

24  procedures); *Woodford*, 548 U.S. at 84, 90-1 (noting that to "properly" exhaust, prisoner

---

26

27  [6]   In addition to RJD-HC-1304994, and RJD-HC-13050039, Defendants claim that on
December 10, 2013, Plaintiff timely filed a third appeal, Log No. RJD-HC-13050094,
28  requesting orthopedic shoes. *See* Defs.' Reply at 4; VanBuren Decl., Ex. A at 9.

21

must "comply with an agency's deadlines and other critical procedural rules."). In this case, the record shows that those "critical procedural rules" required that Plaintiff's CDCR 602 appeal forms "describe the specific issue under appeal and the relief requested," *see* CAL. CODE REGS., tit. 15, § 3084.2 (a), prohibited him from "combining unrelated issues on a single appeal form," *id.* § 3084.2(a)(1), and mandated that he "list all staff member(s) involved" and "describe their involvement in the issue." *Id.*, § 3084.2(a)(3)[7]; *see also Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("[A] prisoner must exhaust his administrative remedies *for the claims contained within his complaint* before that complaint is tendered to the district court.") (emphasis added).

The primary purpose of a grievance is to notify the prison of a problem. *Griffin*, 557 F.3d at 1120 (quotation marks and citations omitted); *accord Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014); *Akhtar v. Mesa*, 698 F.3d 1202, 1211 (9th Cir. 2012). Thus, Plaintiff's CDCR 602 Log No. RJD-HC-1304994 or Log No. RJD-HC-13050039 would suffice to satisfy § 1997e(a)'s exhaustion requirement *if* Defendants Brown and Mendez were included in a list of staff members involved, if either of these appeals "describe[d] [Brown and Mendez's] involvement in the issue under appeal," and if he mentioned or somehow directed his allegations of wrongdoing on their failure to protect him from Gomez, and did not, instead, focus his grievances on his medical infirmities and the injuries he sustained and make specific demands for immediate medical relief. *See* CAL. CODE REGS. tit. 15, § 3084.2. Because the undisputed evidence in the record shows instead that Plaintiff's CDCR 602 Log No. RJD-HC-1304994 and Log No. RJD-HC-13050039 lacked even a modicum of detail involving their purported roles in failing to protect him, Defendants Brown and Mendez could not have reasonably been alerted to

---

[7]    Before January 28, 2011, the CDCR's regulations merely required prisoner to include a description of the problem and the action requested on the CDCR Form 602. *See* § 3084.2(a) (2010); *Sapp*, 623 F.3d at 824 (finding that at the time Sapp filed his grievance, 15 CAL. CODE REGS., § 3084.2 did <u>not</u> require him to identify prison officials by name in order to exhaust).

the nature of the wrong for which Plaintiff now seeks redress against them. *See Sapp*, 623 F.3d at 824; *Akhtar*, 698 F.3d at 1211; *McCollum v. Cal. Dept. of Corr. and Rehabilitation*, 647 F.3d 870, 876 (9th Cir. 2011) (finding Wiccan prisoner's grievance alleging religious discrimination in the form of unequal access to worship places and sacred items insufficient to put prison officials on notice of Plaintiff's separate legal challenge to the prison's failure to establish a paid Wiccan chaplaincy).

Second, Defendants have also proffered sufficient evidence related to Plaintiff's CDCR Form 602 Log No. RJD-A-13-04021 to demonstrate that while it *was* sufficient to put Brown and Mendez on notice of Plaintiff's failure to protect claims against them, there is nevertheless no genuine dispute as to whether this appeal was "properly" exhausted. This is because the record shows, and Plaintiff admits, this appeal was rejected as untimely. *See* CAL. CODE REGS., tit. 15 § 3084.8(b) (requiring inmate or parolee to "submit the appeal within 30 calendar days of: (1) [t]he occurrence of the event or decision being appealed, or; (2) [u]pon first having knowledge of the action or decision being appealed, or; (3) [u]pon receiving an unsatisfactory departmental response to an appeal filed."); CDCR OP. MAN., § 54100.13 ("Cancellation or rejection decisions . . . do not exhaust the administrative remedies available."); Olson Decl. at 3 ¶ 6(a) & Ex. A at 6-11; Pl.'s Supp. Opp'n (Doc. No. 29) at 31; *Woodford*, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines.").

Thus, because Defendants Brown and Mendez have carried their burden to show both that "that there was an available administrative remedy, and that [Plaintiff] did not exhaust that available remedy" as to the failure to protect claims alleged against them, *Albino*, 747 F.3d at 1172, the burden then shifts to Plaintiff to "come forward with evidence" to show "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172; *Williams*, 775 F.3d at 1191.

As mentioned above, Plaintiff has submitted voluminous copies of his medical records in Opposition to Defendant Brown and Mendez's Motion for Summary

1   Judgment, and has included copies of the same CDCR inmate appeals they offer as proof

2   of his *failure* to exhaust. *See* Doc. Nos. 14, 18, 20, 29. He does not expressly claim that

3   administrative remedies were not available to him; but he does argue he should be

4   excused from 42 U.S.C. § 1997e(a)'s exhaustion requirement because he "must not have

5   been in [his] right mind," when he "filed numerous 602's medical and regular appeals"

6   during the "30-40 days" after Gomez's attack due to a "lot of excruciating pain," and

7   because he was "in duress." Plaintiff further admits, however, that "[i]t was not that [he]

8   couldn't file 602s," because his "right arm was good enough to write," but instead it was

9   because he just "could not think straight," and "fe[lt] like a zombie" at the time. *See* Pl.'s

10  Opp'n, Doc. No. 14 at 12; Supp. Opp'n, Doc. No. 20, at 4.

11      "To be available, a remedy must be available as a practical matter; it must be

12  capable of use; at hand." *Williams*, 775 F.3d at 1191 (internal quotations and citations

13  omitted). A prisoner may demonstrate that an administrative remedy was "effectively

14  unavailable" to him by "showing that the local remedies were ineffective, unobtainable,

15  unduly prolonged, inadequate, or obviously futile." *Id.* (quoting *Hilao v. Estate of*

16  *Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)); *Albino*, 747 F.3d at 1172. For example,

17  Plaintiff may meet his burden of production by offering evidence which shows prison

18  officials "thwarted" him by "inform[ing] [him] that he c[ould not] file a grievance,"

19  *Williams*, 775 F.3d at 1192 (citing *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)),

20  threatened him with retaliation if he filed one, *see McBride*, __ F.3d __, 2015 WL

21  3953483 at *3-4, improperly rejected or "screened out" his grievance, *see, e.g., Sapp*, 623

22  F.3d at 822-823; made a "mistake" by erroneously requiring additional paperwork which

23  caused him to miss a filing deadline, *see e.g.*, *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th

24  Cir. 2010); failed to provide him with either grievance forms or information about the

25  grievance procedure, despite his complaints or requests, *see e.g., Albino*, 747 F.3d at

26  1177; or by pointing to other circumstances, like hospitalization, segregation, or transfer

27  to another facility, which precluded any meaningful opportunity to timely comply. *See*

28  *Marella*, 568 F.3d at 1027-28 (remanding exhaustion issue to district court where record

unclear as to whether prisoner injured in a knife attack at the hands of another prisoner had access to the necessary grievance forms or the ability to timely file an appeal due to his stay in the hospital, prison infirmary, and subsequent administrative segregation); *see also O'Neal v. Stewart,* 2014 WL 3818117 at *2 (C.D. Cal. 2014) (collecting cases suggesting an inmate's transfer from one institution to another immediately following the incident giving rise to his claim could render administrative remedies unavailable).

Here, however, Plaintiff has failed to "come forward with evidence" sufficient to rebut the ample evidence offered by Defendants Brown and Mendez which, even when viewed in the light most favorable to Plaintiff, shows both the availability of California's prison administrative procedures, and his failure to properly exhaust those procedures. *Albino*, 747 F.3d at 1172, 1174.[8] Specifically, Plaintiff has failed to show that prison officials thwarted his access to the grievance procedure, threatened or intimidated him in any way, or were mistaken when they rejected RJD Log. No. 13-A-0421 as untimely. *See Williams,* 775 F.3d at 1191-92; *Nunez,* 591 F.3d at 1226; *McBride*, __ F.3d at __, 2015 WL 3953483 at *2-3. Moreover, while Plaintiff suggests his failure to properly include his Eighth Amendment failure to protect claims against Brown and Mendez in either Log No. RJD-HC-1304994 or Log No. RJD-HC-13050039 was due to his confusion, medication, or pain, *see* Pl.'s Opp'n, Doc. No. 14 at 12, he has not pointed to any

---

[8] While Plaintiff's Complaint (Doc. No. 1), and the documents he has submitted in Opposition to Defendant Brown and Mendez's Motion for Summary Judgement (Doc. Nos. 14, 18, 20, 29), contain factual claims related to his ability to exhaust which are based on his personal knowledge, none are verified under penalty of perjury pursuant to 28 U.S.C. § 1746. "A verified complaint may be used as an opposing affidavit under Rule 56." *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987)). In *Williams*, the Ninth Circuit considered allegations raised in a prisoner's complaint related to exhaustion as an affidavit sufficient to show that administrative remedies were "not available" because they were made under penalty of perjury. 775 F.3d at 1192 & n.11. Here, Plaintiff's allegations are not sworn, but even if they were, they would still be insufficient to meet his burden of production as to exhaustion, because unlike in *Williams*, Plaintiff does not claim to have be "thwarted from filing a grievance." *Id.* (citing *Brown*, 422 F.3d at 937).

evidence which shows that his mental or physical state, or any other condition of his confinement outside of his control, precluded him from timely or meaningfully seeking administrative review of either Brown or Mendez's purported role in Gomez's attack. *Cf. Marella*, 568 F.3d at 1027-28; *O'Neal*, 2014 WL 3818117 at *2. In fact, the undisputed evidence before this Court shows that Plaintiff was indeed able to properly exhaust claims related to the medical care and follow-up treatment he received following Gomez's attack when he timely filed Log No. RJD-HC-1304994 and Log No. RJD-HC-13050039, despite his allegedly compromised physical and mental condition at the time.

Therefore, the Court finds Defendant Brown and Mendez are entitled to summary judgment as to Plaintiff's failure to protect claims based on his failure to exhaust those claims prior to filing suit pursuant to 42 U.S.C. § 1997e(a) and FED. R. CIV. P. 56(a).

## V.    Conclusion and Order

Based on the foregoing, the Court:

1)    **GRANTS** Defendant Davis and Krittman's Motion to Dismiss pursuant to FED. R .CIV. P. 12(b)(6) (Doc. No. 10);

2)    **GRANTS** Defendant Brown and Mendez's Motion for Summary Judgment based on Plaintiff's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) pursuant to FED. R. CIV. P. 56 (Doc. No. 9);

3)    **FINDS** no just reason for delay and therefore **DIRECTS** the Clerk to enter a partial judgment on behalf of Defendants Brown and Mendez pursuant to FED. R. CIV. P. 50(b); and

4)    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which addresses the deficiencies of pleading his failure to protect claims against Defendants Davis and Krittman only. Plaintiff is cautioned that his Amended Complaint must be complete in itself without reference to his original complaint. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that

26

claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

Should Plaintiff elect *not* to proceed by filing an Amended Complaint against Defendants Davis and Krittman within 45 days, the Court will enter a final Order of dismissal of the remainder of this civil action based on his failure to state an Eighth Amendment failure to protect claim against them, and his failure to prosecute in compliance with a Court Order requiring amendment. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to prosecute permitted if plaintiff fails to respond to a court's order requiring amendment of complaint); *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  August 6, 2015

HON. GONZALO P. CURIEL
United States District Judge

14cv0891 GPC (RBB)